UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

STEVEN FRANKLIN,

        Petitioner,

– against –

STATE OF NEW YORK

        Respondent.

**MEMORANDUM & ORDER**

13-CV-5075

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUN 03 2015 ★

BROOKLYN OFFICE

**Appearances**

   **For Petitioner:**

      Norman Trabulus
      Law Office of Norman Trabulus
      345 Seventh Avenue, 21st Floor
      New York, NY 10001
      (212) 221-7811
      ntrabulus@gmail.com

   **For Respondent:**

      Jodi Lynne Mandel
      Kings County District Attorney
      350 Jay Street, 20th Floor
      Brooklyn, NY 11201
      (718) 250-2535
      mandelj@brooklynda.org



JACK B. WEINSTEIN, Senior United States District Judge

## Table of Contents

I. Introduction ........................................................................................................2
II. Facts...................................................................................................................4
   A. Crime of Conviction ..................................................................................4
   B. Events Precipitating Petitioner's Conviction..............................................4
III. Procedural History..............................................................................................6
   A. Petitioner's Conviction...............................................................................6
   B. State Court Direct Appeals.........................................................................6
   C. Motion to Vacate Conviction .....................................................................8
   D. Instant Petition............................................................................................8
IV. Applicable Law.................................................................................................11
   A. Antiterrorism and Effective Death Penalty Act........................................11
   B. Statute of Limitations ...............................................................................12
   C. Equitable Tolling......................................................................................12
V. Application of Law to Facts .............................................................................15
VI. Conclusion........................................................................................................16

## I. Introduction

Petitioner, Steven Franklin, seeks a writ of *habeas corpus*. *See* 28 U.S.C. § 2254. It is denied. A certificate of appealability is granted. This may be a rare case where dilatory conduct alone suggests mental problems sufficient to warrant tolling.

On September 19, 2006, a jury convicted petitioner of a felony, Assault in the First Degree. *See* Ex. 4 to Letter from Norman Trabulus, May 13, 2015, ECF No. 32 ("State Court Decision Denying Mot. to Vacate"). He was sentenced to eighteen years imprisonment. *Id.* at 1. To date, he has served some eight years.

The petition was filed on September 9, 2013. *See* Pet. Under 28 U.S.C. § 2254 for Writ of Habeas Corpus 1, ECF No. 1 ("Pet. 1"). The applicable one year statute of limitations had already barred the proceeding. *See* 28 U.S.C. § 2244(d)(1). Time began to run on February 2, 2010, the end of the ninety-day period for filing a *certiorari* petition in the United States Supreme Court from the decision of the New York Court of Appeals denying leave to appeal.

2

*See infra* Part III.B; Sup. Ct. R. 13(1); 28 U.S.C. § 2244(d)(1)(A).

Petitioner had filed a motion in state court to vacate his conviction on September 22, 2010. *See infra* Part III.C. That stopped the statute of limitations clock with respect to an application for *habeas* relief. *See* 28 U.S.C. § 2244(d)(2). This filing occurred after approximately eight months of the statute of limitations period had passed. The motion was denied on February 25, 2011. *See infra* Part III.C.

An untimely motion for leave to appeal was denied by the Appellate Division on July 13, 2012. *Id.* No other state collateral attacks on petitioner's conviction have been pursued.

The *habeas* statute of limitations ran out, at the latest, on December 18, 2012. *See* N.Y. Crim. Pro. Law § 460.10(5)(a) (McKinney 2005); 28 U.S.C. § 2244(d)(1)(A). The instant *habeas* petition was filed approximately nine months after this date, on September 9, 2013. *See* Pet. 1.

No exceptional circumstances, mental or otherwise, prevented petitioner from more diligently pursuing his rights. In a letter dated May 13, 2015, petitioner's counsel conceded that his client does not meet the requirements for equitable tolling: "*I am unable to make a case that petitioner's mental state interfered with his ability to file his habeas corpus petition for long enough to render the petition timely via equitable tolling of the statute of limitations, 28 U.S.C. § 2244(d)(1) and (2).*" *See* Letter from Norman Trabulus 1, May 13, 2015, ECF No. 32 ("Trabulus Letter") (emphasis added).

The court allowed the petitioner to file a *pro se* brief by May 25, 2015. *See* Order, May 14, 2015, ECF No. 33. He did not do so. It also allowed him to testify in this court and to produce any evidence of a requisite mental state. *See* Hr'g Tr., May 26, 2015. He was unable to testify or produce any evidence supporting tolling. *Id.*

Having filed his petition too late, petitioner's request for *habeas corpus* relief is denied.

## II. Facts

The facts are provided for context. They were not relied on in deciding the statute of limitations issue. They were drawn from the parties' briefs to the New York State Supreme Court, Appellate Division, Second Department, on petitioner's appeal of his conviction. *See* Br. of Resp., 2008 WL 8627328 (September 11, 2008), *People v. Franklin*, 883 N.Y.S.2d 95 (N.Y. App. Div. 2d Dep't 2009), ("Resp.'s Br."); Br. of Def.-Appellant, 2009 WL 9373843 (June 12, 2009), *People v. Franklin,* 883 N.Y.S.2d 95 (N.Y. App. Div. 2d Dep't 2009), ("Def.-Appellant's Br.").

### A. Crime of Conviction

On September 12, 2005, fifteen-year-old Jeffrey Saunders was shot in the stomach. *See* Def.-Appellant's Br. *5. The bullet perforated his liver and lodged close to his spine. *Id.* at *6.

### B. Events Precipitating Petitioner's Conviction

At about 8:30 p.m., on September 12, 2005, petitioner, age twenty-six, was talking on his cell phone while standing in front of 360 Dumont Avenue, part of the Tilden Houses in the Brownsville section of Brooklyn. *See* Def.-Appellant's Br. *2. He was standing with three other men, including Quintell Blount and Rasheem Williams. *See* Resp.'s Br. *7. As the victim passed by, petitioner accused him of bumping into him. *Id.* at *4. An argument followed. *See* Def-Appellant's Br. *3.

At the time, Towander Collins, Saunders's mother, was looking out the window of her twelfth-floor apartment on 360 Dumont Avenue. *Id.* at *3–4. Her son at risk, she came down. *See* Resp.'s Br. *4. Collins asked petitioner what the problem was. *Id.* He replied that he had been "disrespected" and would not tolerate it. *Id.*

The intervention by Collins having abated the dispute, petitioner and his friends walked

4

away. *Id.* Collins and Saunders returned to their apartment. *See* Def.-Appellant's Br. *4.

Within a few minutes, petitioner called a friend, Richard Thomas, who lived next door to Saunders's building. *See* Resp.'s Br. *6. Petitioner informed Thomas that he was "about to pop a little nigger." *Id.* Petitioner asked Thomas if he had a gun. *Id.* Thomas responded in the negative. *Id.*

Ten minutes later, petitioner went back to 360 Dumont Avenue, gun in hand. *See* Def.-Appellant's Br. *5. Locating Saunders, who was now standing outside the building talking with friends, petitioner pulled out the handgun. *Id.* Saunders at first attempted to wrest control of the weapon. *Id.* Then, releasing the gun, Saunders told petitioner: "Do what you got to do." *Id.* As the boy's friends screamed that he was "only fifteen," petitioner shot Saunders, turned and ran. *Id.*

Thomas, whom petitioner had called earlier to borrow a gun, heard the shot. *Id.* at *6. He saw petitioner running as Saunders lay bleeding. *Id.* Ten minutes later, Thomas saw petitioner standing across the street from where the shooting had taken place. *Id.* Petitioner warned Thomas to "mind [your] own business," but said, "[I] just popped the little nigger in the street." *Id.*

Later that evening, Thomas met with police detectives. *See* Resp.'s Br. *6. Based on the information Thomas provided, Detective Eric Parks created a "wanted" poster for petitioner, using his photograph from a previous application filled out for a non-driver's license identification card. *See* Def.-Appellant's Br. *7.

The police looked for petitioner at his 345 Dumont Avenue residence, but were unable to find him. *Id.* Two and a half months after the shooting, Police Officer Gabriel Dobles saw petitioner on the street and arrested him. *See* Resp.'s Br. *8. Placed in a lineup, he was

5

positively identified as the shooter by Saunders, Collins, and Thomas. *See* Def.-Appellant's Br. *7.

### III. Procedural History

#### A. Petitioner's Conviction

Petitioner was charged with five crimes: (1) Attempted Murder in the Second Degree, N.Y. Penal Law § 110 ("attempt to commit a crime"), § 125.25 ("murder in the second degree"); (2) Assault in the First Degree, N.Y. Penal Law § 120.10; (3) Assault in the Second Degree, N.Y. Penal Law § 120.05; (4) Criminal Possession of a Weapon in the Third Degree, N.Y. Penal Law, § 265.02; and (5) Endangering the Welfare of a Child, N.Y. Penal Law § 260.10. *See* State Court Decision Denying Mot. to Vacate 1.

A jury convicted him of Assault in the First Degree on September 19, 2006. *Id.* On November 13, 2006, he was sentenced to a term of eighteen years imprisonment. *Id.*

#### B. State Court Direct Appeals

A timely direct appeal was taken to the Appellate Division. *See People v. Franklin*, 883 N.Y.S.2d 95, 95–96 (N.Y. App. Div. 2d Dep't 2009). Overturn was sought on the following grounds: (1) prosecutorial misconduct by painting petitioner as a violent person, vouching for witnesses, improper shifting of the burden of proof, and appealing to jurors' emotions; (2) ineffective assistance of trial counsel, who failed to raise proper objections to the prosecutor's conduct or seek curative instructions; (3) lack of probable cause to arrest; and (4) use of improper identification lineup procedures, including the use of fillers who appeared substantially different than petitioner. *See* Def-Appellant's Br. at *17–31; *People v. Franklin*, 883 N.Y.S.2d at 96.

On July 7, 2009, the Appellate Division affirmed petitioner's conviction, finding no merit in any of petitioner's contentions. *See Franklin*, 883 N.Y.S.2d at 96. The entire brief opinion was:

> The Supreme Court properly denied that branch of the defendant's omnibus motion which was to suppress identification testimony. Contrary to the defendant's contention, the evidence presented by the People demonstrated that the police had probable cause to arrest him. Furthermore, the lineup in which defendant participated was not unduly suggestive. The defendant's physical characteristics were sufficiently similar to those of the other participants in the lineup as to negate any likelihood that the defendant would be singled out for identification.
>
> The defendant's contention that various comments made by the prosecutor during his summation were improper and denied him a fair trial is unpreserved for appellate review, as the defendant either did not object to the remarks at issue or made only general objections, or his objections were sustained without any further request for curative instructions, and he failed to move for a mistrial. In any event, most of the challenged remarks constituted fair comment on the evidence or were responsive to defense counsel's summation. To the extent that certain of the remarks were improper, they were not so egregious as to deprive the defendant of a fair trial.
>
> The defendant's remaining claims of prosecutorial misconduct are unpreserved for appellate review and, in any event, are without merit.
>
> The defendant's remaining contentions are without merit.

*Id.* at 95–96 (citations omitted).

Four months after his appeal to the Appellate Division had been denied, on November 4, 2009, petitioner was denied leave to appeal to the New York Court of Appeals. *People v. Franklin*, 920 N.E.2d 99, 99 (N.Y. 2009). No explanation was provided by the court. *Id.*

No application for *certiorari* was made to the United States Supreme Court.

### C. Motion to Vacate Conviction

After a delay, on September 22, 2010, petitioner moved in New York State Supreme Court to vacate his conviction. *See* Ex. 2 to Trabulus Letter; N.Y. Crim. Pro. Law § 440.10 note (McKinney 2015) (Practice Commentaries) ("[N.Y. Crim. Pro. Law § 440.10] was designed to encompass all extant non-appellate post-judgment remedies and motions to challenge the validity of a judgment of conviction . . . ."). He claimed: (1) he was denied a fair trial by the prosecutor's conduct; (2) the photo array used in his arrest was improper; and (3) the trial court was prejudiced against him. *See* Ex. 2 to Trabulus Letter. On February 25, 2011, the motion was denied. *See* State Court Decision Denying Mot. to Vacate 4.

Over one year later, on March 31, 2012, petitioner filed an application in the Appellate Division, Second Department, for leave to appeal. *See* Ex. 5 at 1–5 to Trabulus Letter ("Leave to Appeal"). The application was opposed on the merits; statute of limitations arguments were not presented. *See id.* at 6; Trabulus Letter 2. Without stating its reasons, the Appellate Division denied the motion on July 13, 2012. *See* Leave to Appeal 7.

### D. Instant Petition

On September 9, 2013, petitioner filed a *pro se* petition for a writ of *habeas* corpus. *See* Pet. 1. He alleged: (1) prosecutorial misconduct; (2) lack of probable cause to arrest; and (3) ineffective assistance of trial counsel. *Id.* at 6–9. The petition states that any untimeliness was due to petitioner's major depression, which included suicidal thoughts prompted by the death of his mother and grandmother during his incarceration. *Id.* at 14.

Counsel was appointed pursuant to the Criminal Justice Act ("CJA"). *See* 18 U.S.C. § 3006A; CJA 20: Appointment of Attorney Norman Trabulus for Steven Franklin, Sept. 25, 2013, ECF No. 6.

After having completed the time-consuming process necessary to obtain the multiple authorizations required to review petitioner's medical records, on May 13, 2015, petitioner's counsel wrote the court in anticipation of the May 26, 2015 hearing. *See* Trabulus Letter 3. The hearing had been scheduled to ascertain whether petitioner's mental state had an impact on his ability to timely file his writ of *habeas corpus*. *See id.* at 1, 3. While evidentiary in nature, the petitioner impliedly waived any right to be present in person. He was present by telephone and was offered the right to consult privately with counsel. *See* Hr'g Tr. May 26, 2015. The letter stated the basis for counsel's conclusion that petitioner had not met the requirements for equitable tolling. *See* Trabulus Letter 1–4. Essentially, counsel conceded that no mental problem precluded a timely filing. *Id.* at 1. He explained:

> I have reviewed Mr. Franklin's medical, educational, and work records from Clinton Correctional Facility, as well as his mental health records from the New York State Office of Mental Health, a separate state agency that maintains its own facility on the Clinton Correctional Facility grounds. Obtaining these records was time-consuming, requiring several different forms of authorization; moreover, the Office of Mental Health originally maintained it had no records because Mr. Franklin was not formally admitted there; it did, however, eventually provide records for the three occasions he was screened for possible admission at the request of prison staff. It appears he was not admitted because he was found not to pose a danger to himself or others; that he was not admitted does not itself speak to his ability to prepare legal papers.
>
> Since, as will appear, I am unable, even in a best-case scenario, to support tolling for anywhere near the requisite period of time, I am not submitting any of Mr. Franklin's records with this letter, out of concern for his privacy. Those records do, however, give good cause to believe that for some time before the statute of limitations began to run on February 2, 2010, and up to some time after March 9, 2010 – the last time Mr. Franklin was screened for possible admission to the Office of Mental Health facility – he suffered from incapacitating depression that likely would have prevented him from filing the petition then. If there were any prospect of establishing the requisite period of tolling to save the petition I would have sought to retain a medical expert on the question.

9

> *There are, however no records after March 9, 2010 that reflect depression. Moreover, Mr. Franklin's prison education records from May 2010 on forward uniformly extol him for diligently studying for the GED exam, completing his assignments, both in class and out, and performing well in class, though, due to a learning disability, working extra hours and taking longer than the average inmate to complete his assignments.*
>
> By May 9, 2010, Mr. Franklin had prepared his notice of motion to vacate, though it took him until June 16 to prepare the supporting affidavit. He ascribes that additional delay, as best he can recall the reason, both to still being depressed and also to the fact that it in general takes him longer than most people to do things. It appears he sent these papers to the wrong court but when he got them back filed them correctly, in September 2010.
>
> Mr. Franklin, who again, impresses as candid, was unable, during our personal meeting, or in prior correspondence or telephone calls, to provide a reason consistent with equitable tolling why it took him over a year to seek leave to appeal the denial of his motion to vacate, or took another 13+ months after that for him to file his petition here. I am unable, based on what Mr. Franklin told me, or on what is in the records I have reviewed, to differentiate his mental condition, during these two thirteen plus month periods, from his condition when he was preparing his motion to vacate in May and June 2010, or when, in March 2012, he prepared and filed his application for leave to appeal the denial of that motion, in both instances, utilizing forms similar in type, though shorter than, the form he ultimately used to file the petition here in September 2013. Accordingly, I am unable to support an argument that any of twenty-six plus months those periods add up to are subject to equitable tolling.

*Id.* at 3–4 (emphasis added).

At the hearing on May 26, 2015, available medical and other relevant records that might have supported the *habeas* petition were introduced and considered by the court. *See* Hr'g Tr., May 26, 2015; Sealed Exs. 1-6, May 27, 2015, ECF No. 34 ("Sealed Exs."). Petitioner relied on his attorney's arguments and did not wish to be heard. *See* Hr'g Tr., May 26, 2015. No further investigation is warranted.

10

## IV. Applicable Law

### A. Antiterrorism and Effective Death Penalty Act

This proceeding is governed by section 2254 of title 28 of the United States Code, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA allows a federal court to grant a writ of *habeas corpus* on a claim that was "adjudicated on the merits" in state court only if the court concludes: (1) the adjudication of the claim in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) the state court's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"[A]n adjudication on the merits is a substantive, rather than a procedural, resolution of a federal claim." *Sellan v. Kuhlman*, 261 F.3d 303, 313 (2d Cir. 2001) (citation and internal quotation marks omitted).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrived at a conclusion opposite to that reached by [the Supreme Court] on a question of law, or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000); *Bell v. Cone*, 535 U.S. 685, 694 (2002).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413; *Bell*, 535 U.S. at 694. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must

11

also be unreasonable." *Williams*, 529 U.S. at 411; *Duhs v. Capra*, 13-CV-1056, 2015 WL 428321, at *14 (E.D.N.Y. Feb. 3, 2015).

"[F]ederal law, as determined by the Supreme Court, may as much be a generalized standard that must be followed, as a bright-line rule designed to effectuate such a standard in a particular context." *Overton v. Newton*, 295 F.3d 270, 278 (2d Cir. 2002); *see also Yung v. Walker*, 341 F.3d 104, 111 (2d Cir. 2003) (district court's *habeas* decision remanded for reconsideration in light of "the more general teachings" of applicable Supreme Court decision). Determination of factual issues made by a state court "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The applicant "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*

### B. Statute of Limitations

Applications for writs of *habeas corpus* by individuals who are in custody pursuant to state court judgments are subject to AEDPA's one year statute of limitations. *See* 28 U.S.C. § 2244(d)(1). A petition for writ of *habeas corpus* must be filed within one year of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *See* 28 U.S.C. § 2244(d)(1)(A). The United States Supreme Court has held that "[AEDPA] is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010).

### C. Equitable Tolling

The Court of Appeals for the Second Circuit has declared that equitable tolling of the statute of limitations applies only in "rare and exceptional circumstances." *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005). "[A] litigant seeking equitable tolling must establish two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Bolarinwa v. Williams*, 593 F.3d

12

226, 231 (2d. Cir. 2010) (quoting *Lawrence v. Florida*, 549 U.S. 327, 336 (2007) (holding equitable tolling for mental incapacity was not permitted where there was "no factual showing of mental incapacity")).

"[W]hether equitable tolling is warranted in a given situation is a highly case-specific inquiry." *Id.* at 232 (citation and internal quotation marks omitted). "The term 'extraordinary' refers not to the uniqueness of a party's circumstance, but rather to the severity of the obstacle impeding compliance with a limitations period." *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011) (finding that defendant was not required to show due diligence during the time *outside* the period he had equitably tolled due to hospitalization).

> Instances which justify equitable tolling include a corrections officer's intentional confiscation of a prisoner's petition shortly before the filing deadline, a state appellate court's failure to inform a prisoner that his leave to appeal was denied, and an attorney's failure to file a habeas petition on behalf of a prisoner, despite explicit directions from the prisoner to do so.

*Dillon v. Conway*, 642 F.3d 358, 363 (2d Cir. 2011) (internal citations omitted) (equitable tolling of *habeas* petition permitted where counsel failed to file petition despite petitioner's explicit instructions, and counsel informed petitioner that it would be filed before the deadline).

A petitioner must demonstrate details of mental illness supporting equitable tolling:

> The burden of demonstrating the appropriateness of equitable tolling for mental illness lies with the plaintiff; in order to carry this burden, she must offer a particularized description of how her condition adversely affected her capacity to function generally or in relationship to the pursuit of her rights. Therefore, in order to justify tolling of the AEDPA one-year statute of limitations due to mental illness, a habeas petitioner must demonstrate that her particular disability constituted an extraordinary circumstance severely impairing her ability to comply with the filing deadline, despite her diligent efforts to do so.

*Bolarinwa*, 593 F.3d at 232 (emphasis added) (citation and internal quotation marks omitted)

(denial of *habeas* petition vacated and remanded to allow petitioner opportunity to present facts that would support a claim of equitable tolling due to mental illness).

Courts have permitted equitable tolling where the petitioner demonstrated that a mental illness or impairment prevented him from effectively contesting his detention. *See, e.g., Forbess v. Franke*, 749 F.3d 837, 841 (9th Cir. 2014) (equitable tolling of *habeas* petition permitted where petitioner suffered from delusions that would have completely prevented him from filing); *Smith v. Berghuis*, No. 10-CV-12562, 2011 WL 572420, at *3–4 (E.D. Mich. Feb. 15, 2011) (equitable tolling of *habeas* petition permitted where petitioner has proven history of mental illness during time to be tolled, and psychiatrist's report stated that petitioner's bipolar disorder and schizophrenia "significantly impair[] judgment, behavior, capacity to recognize reality, and the ability to cope with the ordinary demands of life"); *Brayboy v. Vasbinder*, No. 07-CV-11350, 2008 WL 373418, at *2 (E.D. Mich. Feb. 12, 2008) (equitable tolling of *habeas* petition permitted where petitioner demonstrated legal blindness, mental retardation, and illiteracy); *Benn v. Grenier*, 275 F. Supp. 2d 371, 373–74 (E.D.N.Y. 2003) (equitable tolling of *habeas* petition permitted where petitioner showed medical documentation demonstrating he suffered from depression and schizophrenia with accompanying auditory hallucinations).

In order to establish that a *habeas* claim is supported by equitable tolling, a petitioner must point to evidence—preferably medical—that shows, in detail, mental incapacitation impeding the ability to pursue rights. *See, e.g., Smith v. Annucci*, No. 13-CV-00454, 2014 WL 2215765, at *3 (N.D.N.Y. May, 29, 2014) (equitable tolling not permitted where petitioner's mental health medical documentation "[does] not portray [petitioner] as being incapable of rational thought or lacking the wherewithal to ascertain what legal steps he needed to take"); *Green v. Sheehan*, No. 12-CV-0665, 2014 WL 338832, at *6 (W.D.N.Y. Jan. 30, 2014)

(equitable tolling not permitted where medical records submitted did not show that mental condition was an "exceptional circumstance" and there was no particularized explanation for how petitioner's depression prevented him from pursuing his legal rights); *Boyd v. United States*, No. 13-CV-5572, 2013 WL 6081701, at *5 (E.D.N.Y. Nov. 19, 2013) (equitable tolling not permitted where medical documentation did not show petitioner was mentally incapacitated in way that would prevent filing of *habeas* petition); *De Los Santos v. Ercole*, No. 07-CV-7569, 2013 WL 1189474, at *6 (S.D.N.Y. Mar. 22, 2013) (equitable tolling not permitted where documentation about petitioner's mental illness and stays in prison psychiatric facilities did not demonstrate incapacitation).

Actual innocence as a basis for avoiding the one year statute of limitations has not been asserted. *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013).

## V. Application of Law to Facts

At the request of prison staff, petitioner was screened for mental health issues by the Office of Mental Health at Clinton Correctional Facility on three occasions. *See supra* Part III.D. But he was never formally admitted to a mental facility or found mentally disabled. *Id.* This lack of a positive medical finding of incapacity, combined with the fact that from May 2010 onward petitioner was extolled as a diligent student, completing assignments both in class and out, negates a serious mental disability. *Id.*; *see also supra* Part IV.C.

No showing has been made of a mental illness or impairment that prevented petitioner from effectively contesting his detention. No rare, exceptional, or extraordinary circumstance has been presented to justify equitable tolling. The medical and other records demonstrating petitioner's *attempts* to be admitted to the Office of Mental Health as a patient do not support the claim that he was mentally disabled in preparing and filing any claim for post-judgment relief.

## VI. Conclusion

Petitioner's writ of *habeas corpus* is dismissed. Equitable tolling does not save the petition.

Granted is a certificate of appealability. Mental problems not supported by medical records may underlie the cause for petitioner's dilatory filings in state and federal courts.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: June 2, 2015
Brooklyn, New York

16